United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD GEASLAND,
Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
Defendant.

Case No. 25–cv–09766–RS

**ORDER REMANDING FOR FURTHER PROCEEDINGS**

## I. INTRODUCTION

Plaintiff Richard Geasland and Defendant, the Commissioner of Social Security ("the Commissioner"), agree this case should be remanded. Geasland moves for remand for an immediate award of benefits pursuant to the Social Security Act ("SSA") or, in the alternative, remand for further administrative proceedings, while the Commissioner moves for remand for further administrative proceedings. According to Geasland, the Administrative Law Judge ("ALJ") erred in her evaluation of the relevant medical opinions, rejection of claimant testimony, and reliance on the vocational expert's hypothetical conjecture. For the reasons discussed below, this matter is remanded for further administrative proceedings.

## II. BACKGROUND

### A. Geasland's Application for Social Security Benefits

Richard Geasland alleges his disability began on March 15, 2019, when he was forty-eight years old, due to lumbar degenerative disc disease, psoriatic arthritis, and depression (AR 26, 51,

784).[1] He is insured for Social Security Disability Insurance ("SSDI") benefits until September 30, 2025, and therefore must establish his disability started on or before that date. 20 C.F.R. § 404.130 (2026).

On May 11, 2022, Geasland filed a Title II application for a period of disability and disability insurance benefits beginning March 15, 2019 (AR 24). He was denied twice – once on September 21, 2022, and again on June 14, 2023 (AR 24). He then filed a written request for a hearing which was held by telephone on September 10, 2024, where all parties and a vocational expert were present (AR 24).

**B. Dr. Hastings's Examination**

On April 9, 2023, Dr. Elliot Hastings, a psychologist, examined Geasland on behalf of the agency (AR 779). Dr. Hastings reported that Geasland has a sense of shame, low motivation, fatigue, social isolation, racing thoughts, and poor sleep. *Id.* Dr. Hastings determined Geasland developed these symptoms following his back injury which caused him difficulty in his daily living and led to isolation from others (AR 780–81), ultimately diagnosing Geasland with depressive disorder (AR 782). Dr. Hastings concluded Geasland would be moderately limited in his ability to complete a normal workday or workweek without interruptions from symptoms (AR 783).

**C. Dr. Gong's Examination**

On April 19, 2023, Geasland visited Dr. Derek Gong who completed an examination on behalf of the agency (AR 771). In his report, Dr. Gong noted Geasland injured his back in 2015 and had laminectomy surgery. *Id.* Following the surgery his symptoms worsened again, which prompted a second surgery in 2019. *Id.* Dr. Gong noted that Geasland currently suffers from lower back pain which also radiates down his legs. *Id.* Geasland received two epidural steroid injections and completed physical therapy with limited relief. *Id.* Dr. Gong also noted Geasland was diagnosed with psoriatic arthritis in 2016, which causes pain concentrated in his hands and feet

[1] This synopsis is based on the certified administrative record ("AR").

United States District Court
Northern District of California

with flares occurring two to three days at a time about once a month. *Id.* Geasland reported the medication he takes helps with his skin rash and fatigue but does not improve his joint pain. *Id.*

During the examination Dr. Gong observed a limited range of motion in Geasland's lumbar spine, tenderness over the lumbar spine, and scattered psoriatic plaques over both hands (AR 774, 776). In the most recent x-rays of the lumbar spine, Dr. Gong observed moderate arthritis which was consistent with Geasland's description of his symptoms. *Id*.

Dr. Gong concluded that Geasland could stand and walk for twenty minutes at a time for a total of three hours in an eight–hour workday with normal breaks (AR 777). Geasland does not require an assistive device and can lift and carry up to ten pounds occasionally, and never over ten pounds. *Id.* His ability to climb, balance, stoop, kneel, crouch, and crawl is occasionally limited due to back pain and fatigue. *Id.* Exposure to unprotected heights, heavy machinery, and driving is limited due to hand/finger pain, back pain, and fatigue. *Id*.

### D. Administrative Hearing

#### *1. Geasland's Testimony*

During the administrative hearing in September 2024, Geasland testified he lives on the same property as a friend who comes over three to four times a week to help with chores that he is unable to complete on his own (AR 47); he suffers from flareups of his psoriatic arthritis around once a month which makes his pain worse (AR 55); his impairments cause him challenges sitting, standing, lifting, and bending, *id*; he requires breaks every fifteen minutes while attempting household chores, *id.*; and he spends most of the day lying down, *id*. He also testified that he is depressed because he is unable to work, the depression causes him to shut out his friends, and he suffers from fatigue and lack of motivation (AR 60–61). He also reported experiencing pain, weakness, spasm, swelling, back and leg issues, balance issues, and limitations sitting, walking, carrying, standing, and focusing or concentrating (AR 26). He indicated dexterity issues, issues with his hands, issues dropping things, and issues holding or gripping things as well. *Id.*

#### *2. The Vocational Expert's Testimony*

Dr. Sabrina Singleton, a vocational expert, determined that laundry worker was the only potential job Geasland could perform at a medium exertional level with limitations on frequent

bilateral handling and fingering, few changes in routine work settings, and limitations on occasional stooping, climbing ramps and stairs, and climbing ladders, ropes, and scaffolds (AR 66). At the light exertional level, with the same limitations, Dr. Singleton determined mail clerk, merchandise maker, and cleaner were available jobs. *Id*. Under cross–examination, Dr. Singleton determined that with the additional limitation of lifting and carrying less than ten pounds occasionally, the identified jobs would be precluded (AR 67–68). Furthermore, Dr. Singleton concluded that if an individual were limited to standing and walking or sitting for twenty minutes at a time for a total of three hours in an eight-hour workday, all the proposed occupations would be eliminated (AR 67). Dr. Singleton also established that someone who is off task more than fourteen percent of the workday or absent more than two days each month could not sustain competitive employment (AR 67).

**E. Denial of Geasland's Application**

On October 29, 2024, the ALJ found Geasland was not disabled under sections 216(i) and 223(d) of the SSA (AR 35). Based on the five-step disability inquiry, the ALJ determined Geasland did not engage in any substantial gainful activity (AR 19); Geasland has severe impairments which could be expected to cause the symptoms and limitations he described including back pain, degenerative disc disease, and psoriatic arthritis, and depression, but the limitations did not meet or equal the listed impairments (AR 20); Geasland had no past relevant work (AR 33); and, based on the vocational expert's testimony, Geasland could perform the occupations of mail clerk, merchandise maker, and housekeeping cleaner (AR 34).

**F. Geasland's Request for Review**

Geasland requested review of the ALJ decision by the Appeals Council. In September 2025, the Appeals Council denied the request (AR 1–6), and the ALJ's decision became the final order of the Agency.

**G. This Action**

On May 7, 2026, Geasland commenced this action against the Commissioner, seeking judicial review of the denial of his application for SSI benefits pursuant to 42 U.S.C. § 405(g) and

an immediate award of benefits or, in the alternative, remand for further administrative proceedings. On May 28, 2026, the Commissioner filed a motion for remand for further administrative proceedings.

## III. LEGAL STANDARD

### A. Standard of Review

The Social Security Act authorizes judicial review of final decisions made by the Commissioner. 42 U.S.C. § 405(g). "Th[e] court may set aside the Commissioner's denial of disability insurance benefits when the findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence in the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citations omitted). If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations and quotation marks omitted).

### B. Disability Determinations by an ALJ

The SSA defines "disability" as the inability to engage "in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is entitled to disability benefits only if he proves he is disabled. 42 U.S.C. § 423(d)(5)(A).

In evaluating whether a claimant is disabled, the Commissioner must follow a five–step sequential inquiry. 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden rests on the claimant to prove: (1) he is not working; (2) he has a severe

medically determinable impairment that is expected to last more than twelve months; and either (3) that impairment is severe enough to meet or equal an impairment listed as a priori disabling without further vocational–medical evidence; or (4) the impairment causes such functional limitations that he cannot do his past relevant work. 20 C.F.R. § 404.1520(a)(4)(i)–(iv). If the claimant successfully proves he cannot do his past work, then the burden shifts to the Commissioner to show at step five that the claimant can perform other work that exists in significant numbers in the economy; otherwise, the claimant will be found disabled. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *see* 20 C.F.R. § 404.1520(a)(4)(v). Moreover, if the claimant's impairment does not meet or equal a listed impairment under step three, the ALJ must determine the claimant's residual functional capacity ("RFC") and apply it during steps four and five to make a final disability determination. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 (9th Cir. 2007) (citing 20 C.F.R. § 404.1520(a)(4), which describes the five–step process).

### C. Remand for Further Proceedings or Immediate Award of Benefits

"If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded" for further proceedings. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). If, however, "the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). An immediate award of benefits is appropriate only if "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id*. Even if all three requirements are met, the court retains "flexibility" in determining the appropriate remedy. *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014); *Brown–Hunter v. Colvin*, 806 F.3d 487, 495–96 (9th Cir. 2015).

## IV. DISCUSSION

Geasland seeks remand for an immediate award of benefits arguing the ALJ improperly evaluated the relevant medical opinions, rejected claimant testimony, and further that step five of the disability inquiry is not supported by substantial evidence. The Commissioner opposes, seeking remand to rectify doubt in the record.

**A. Did the ALJ improperly evaluate the medical opinions?**

"The agency must 'articulate… how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods v. Kijakazi,* 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. §§ 404.1520c(b), (b)(2)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant . . . objective medical evidence." *Id.* at 791–92 (internal quotations and citation omitted). *See also* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be"). "Consistency means the extent to which a medical opinion is 'consistent… with the evidence from other medical sources and nonmedical sources in the claim.' " *Woods,* 32 F.4th at 792; see also 20 C.F.R. §§ 404.1520c(c)(2) ("The more consistent a medical opinion(s)… is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)… will be"). When rejecting a medical opinion as unsupported or inconsistent, the ALJ is required to "provid[e] an explanation supported by substantial evidence." *Woods,* 32 F.4th at 792.

**i. Treatment of Dr. Gong's Medical Opinion**

The ALJ found Dr. Gong's opinion to be unpersuasive (AR 29). In particular, the ALJ discredited Dr. Gong's finding that Geasland was limited to lifting and carrying 0–10 pounds occasionally, sitting three hours in an eight-hour workday, and walking three-hours in an eight-hour workday. In rejecting Dr. Gong's opinion, the ALJ cited lack of assistive devices, ability to get on and off an exam table, clear lungs, regular heart rate and rhythm, non-tender abdomen, fine motor coordination, normal sensory responses, normal walk, lack of muscle atrophy or edema,

normal range of motion, and no swelling noted in another consultative examination report from April 2023 (AR 29). However, these do not refute Dr. Gong's reliance on Geasland's chronic pain in his finding that, while claimant can occasionally carry out different physical tasks, he is limited by pain in duration and difficulty. Further, the activities the ALJ relied upon to discredit Dr. Gong's findings, such as dressing, bathing, grooming, eating, driving, and cooking are not inconsistent with Dr. Gong's assessment that Geasland's lifting and carrying must occasionally be limited to 0–10 pounds and walking and standing must be limited to three hours in an eight-hour workday (AR 29–30).

The medical records the ALJ relied on to discredit Dr. Gong's findings also do not provide substantial evidentiary support. *See Ortiz v. Bisignano*, 2025 WL 4947035, *7–8 (9th Cir. June 24, 2026) (finding insufficient support to discredit medical opinions where the "record citations [were] only snapshots of [claimant], generally in the context of routine observations and outside of [specific] treatment" and finding the ALJ "repeated another error…[when] relying on isolated recordings of normal behavior to contradict…diagnoses…that are inherently episodic"). One report that Geasland was doing well comes from a two-week follow-up visit after Geasland's second lumbar fusion surgery in 2019 *while his incisions were still healing* (AR 424–25). The ALJ also relies on notes in a report from an emergency room visit leading to hospital admission that found Geasland to be alert and oriented, lacking acute distress, lacking motor and sensory deficits, and having normal muscles (AR 3062, 3078–82). However, these were noted in the context of evaluating vital signs for indicators of emergency as opposed to an orthopedic or pain management setting (AR 3062, 3078–82). Moreover, the same report *does* note an MRI of the spine showing stenosis near the area of previous surgery that "is likely the source of patient's symptoms," which included patient-reported right leg weakness and twitching. *Id.* In short, the ALJ erred in explaining her reasons for rejecting Dr. Gong's medical opinion.

The error is not harmless. "An error is harmless only if it is inconsequential to the ultimate nondisability determination." *Lambert v. Saul,* 980 F.3d 1266, 1278 (9th Cir. 2020). Dr. Gong's limitations would affect the ultimate disability determination since the vocational expert testified

United States District Court
Northern District of California

the standing, walking, sitting, and carrying limitations eliminated the ability to complete the proposed occupations (AR 67). If the ALJ had accepted the limitations Dr. Gong recommended, there would be a determination of disability.

**ii. Treatment of Dr. Hastings' Medical Opinion**

Dr. Hastings diagnosed Geasland with major depressive disorder moderately impacting his ability to complete a normal workday in a normal work week, and the ALJ found Dr. Hastings' opinion partially persuasive. The ALJ found Geasland's depression to be a severe impairment but did not agree that it limited Geasland's ability to complete a normal workday. To explain her reasoning, the ALJ repeats her recitation of the emergency room visit record (e.g., alert and oriented, normal mental state) and various reported activities (e.g., cooking, driving, shopping). As before, these fail to "provid[e] an explanation supported by substantial evidence." *See Woods,* 32 F.4th at 792.

Again, the error is not harmless. The ultimate disability determination could be affected if Dr. Hastings' opinion were credited. (AR 67 "Someone who is off task more than fourteen percent of the workday or absent more than two days each month could not sustain competitive employment.").

**B. Treatment of Claimant Testimony**

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison*, 759 F.3d at 1014. At the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant " 'need only show that [her impairment] could reasonably have caused some degree of the symptom.' " *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "[O]bjective medical evidence of the pain or fatigue itself, or the severity thereof" is not required. *Smolen*, 80 F.3d at 1282.

If the claimant satisfies this first step and there is no evidence of malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *See Vasquez*, 572 F.3d at 591. *See also Hahn v. Kijakazi*, 725 F. Supp. 3d 994, 1014 (N.D. Cal. 2024). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.' " *Garrison*, 759 F.3d at 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir.2002)). The ALJ "must either accept claimant's testimony or make *specific* findings rejecting it," including "stat[ing] which [symptom] testimony is not credible" based on "what evidence." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (emphasis added). *See also Ortiz*, 2025 WL 4947035 at *9–11 (ALJ erred in discrediting parts of claimant's testimony without "specifically mention[ing] or discredit[ing] [supporting] testimony" and by failing to include record citations that support the ALJ's conclusions for each symptom). Yet, so long as it is specifically-identified, "[c]ontradiction with the medical record *is a sufficient basis* for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995)); *Ortiz*, 2025 WL 4947035, *9)).

Here, the ALJ found that Geasland's medically determinable impairments could reasonably be expected to cause the alleged symptoms but discredited Geasland's statements concerning the intensity, persistence, and limiting effects of these symptoms as "not entirely consistent with the medical evidence and other evidence in the record" (AR 26). However, the ALJ again relies on the two-week surgical follow-up, emergency room visit, April 2023 consultative exam,[2] and claimant's reported activities with nearly the same verbiage used in discrediting the opinions of Dr. Gong and Dr. Hastings (AR 26–27, 32). The ALJ then goes on to discuss her treatment of the medical opinions without "stat[ing] which [symptom] testimony is not credible" based on "what evidence." *See Dodrill*, 12 F.3d at 918. After discussing each medical

[2] Showing ability to get on and off exam table, clear lungs, normal heart, non-tender abdomen, normal walk, no muscle atrophy or edema, normal range of motion, no swelling, muscle strength (AR 27).

opinion, the ALJ writes that "[b]ased on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the record," and "a limitation to work at the light level" is warranted but further limitations are not (AR 32). Then, she again recites her analysis of the two-week surgical follow-up, emergency room visit, April 2023 consultative exam, and claimant's reported activities using nearly the same verbiage as before. She concludes "[t]his evidence is consistent with a finding the claimant retained the functional abilities in the above residual functional capacity" (AR 32–33). In short, the ALJ never returns to provide clear and convincing and specific reasons, as he must, for her rejection of claimant's testimony regarding his difficulties sitting, standing, walking, and lifting and his inability to sustain activity on a regular and continuing basis.

**C. Remand for Further Proceedings**

Remand for further proceedings is appropriate here. An immediate award of benefits is appropriate only if "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke*, 379 F.3d at 593. Even if all three requirements are met, the court retains "flexibility" in determining the appropriate remedy. *Garrison*, 759 F.3d at 1021; *Brown–Hunter*, 806 F.3d at 495–96 (determining remand for an immediate award of benefits was not appropriate because although the ALJ committed legal error by failing to specify what testimony was not credible, there were critical questions that remained regarding the impact of the claimants pain and symptoms rendering her disabled).

**1. Failure to Provide Legally Sufficient Reasons for Treatment of Evidence**

The first prong requires that the ALJ did not provide a legally sufficient reason for rejecting the evidence. As discussed, the ALJ here did not reject the medical opinions of Dr. Gong or Dr. Hastings with reasons supported by substantial evidence. *See Woods v*, 32 F.4th at 792 ("An ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate .

. . how persuasive' it finds '*all* of the medical opinions' from *each* doctor or other source." (quoting 20 C.F.R. §§ 404.1520c(b), (b)(2)) (emphases added)). The first prong is met.

**2. Outstanding Issues**

The second prong requires that there are no outstanding issues to be resolved prior to a determination of disability. The test for an outstanding issue is "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103–04 (9th Cir. 2014). Under the "applicable legal rules" prong, an unresolved issue that is singularly dispositive to the determination of disability is considered outstanding where an award of benefits is mandatory. *See Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) (holding that the credibility of the claimant's pain testimony was an outstanding issue because it alone would decide claimant's eligibility for benefits); *see also* 42 U.S.C. § 423(a)(1)(E) ("Every individual who . . . is under a disability . . . shall be entitled to a disability insurance benefit . . .").

Here, there are outstanding issues. The medical consultants made conflicting determinations about what limitations are proper: there was insufficient evidence for the limitations, Geasland's impairments were nonsevere, and Geasland required substantial limitations (AR 28, 29). Since the second prong is not satisfied, the matter must be remanded for further proceedings.

**V. CONCLUSION**

For the reasons set forth above, this matter is remanded for further administrative proceedings without an immediate award of damages.

**IT IS SO ORDERED**.

Dated: July 16, 2026



RICHARD SEEBORG
United States District Judge